**SEKO AIR FREIGHT, INC., Plaintiff,**

v.

**DIRECT TRANSIT, INC., Defendant.**

No. 93 C 5100.

United States District Court,
N.D. Illinois,
Eastern Division.

June 29, 1994.

---

Lyndon M. Flossi, James M. Hoffman & Associates, Schaumburg, IL, for Seko Air Freight, Inc.

Byron L. Matten, Byron L. Matten & Associates, P.C., Oak Brook Terrace, IL, for Direct Transit Inc.

## ORDER

ROSEMOND, United States Magistrate Judge.

Plaintiff Seko Air Freight ("Seko") commenced this action on August 23, 1993. Seko alleges that defendant Direct Transit was negligent in transporting goods. Seko seeks reimbursement for the goods that were never delivered to their destination due to Direct Transit's alleged negligence. In its complaint, Seko alleges that this District is proper venue pursuant to 49 U.S.C. § 11707. Defendant Direct Transit moves this Court to transfer venue pursuant to 49 U.S.C. § 11707(d)(2)(A)(iii). **Defendant Direct Transit's motion to transfer venue is denied.**

## BACKGROUND.

Plaintiff Seko is an air freight company that is licensed to provide such service in Illinois and within the continental United States. Defendant Direct Transit is an Iowa Corporation that is licensed to do business as a freight carrier within the continental United States. Its principal place of business is in South Dakota, but it also has offices in Indiana.

On or about September 17, 1988, Seko contracted with a computer business located in California to deliver computer equipment to another computer company located in Texas. In order to facilitate this delivery, Seko contracted with a transportation broker to make arrangements for the delivery of the computer equipment. The broker hired defendant Direct Transit to pick up the equipment in California and deliver it to Texas *via* truck shipment. At no time did Direct Transit receive or ship any of the computer equipment through Illinois.

Upon delivery, it was discovered that some computer equipment was missing. Seko alleges that this loss was attributed to the negligent acts and/or omissions of Direct Transit's agents and employees. However, neither Seko nor Direct Transit knows where the loss occurred. Based on the geographic route of the shipment, the loss could have occurred in California, Texas, Arizona, New Mexico, or anywhere else in between these points. Seko has reimbursed the computer company in California for the loss, and now seeks reimbursement from Direct Transit.

## ANALYSIS.

Seko claims that the Northern District of Illinois is a place of proper venue under 49 U.S.C. § 11707(d)(1), which reads as follows:

**(d)(1)** A civil action under this section may be brought against a delivering carrier (other than a rail carrier) in a district court of the United States or in a State court. Trial, if the action is brought in a district court of the United States is in a judicial district, and if in a State court, is in a State, through which the defendant carrier operates a railroad or route.

Defendant Direct Transit challenges venue in Illinois as improper under 49 U.S.C. § 11707(d)(2)(A)(iii), which reads as follows:

**(2)(A)** A civil action under this section may only be brought—

(i) Against the originating rail carrier, in the judicial district in which the point of origin is located;

(ii) against the delivering rail carrier, in the judicial district in which the principal place of business of the person bringing the action is located if the delivering carrier operates a railroad or a route through such judicial district, or in the judicial district in which the point of destination is located; and

(iii) against the carrier alleged to have caused the loss or damage, in the judicial district in which such loss or damage is alleged to have occurred.

Direct Transit argues that the above-quoted § 11707(d)(2)(A)(iii) dictates that Seko's action may only be brought in the judicial district where the alleged loss has occurred. However, Direct Transit does not identify the district where the loss occurred, but rather suggests several possibilities. In any event, Direct Transit's premise is predicated on the fact that the loss could not have occurred in the State of Illinois because it is not one of the many states along the shipping route between the States of California and Texas through which the goods were shipped. Accordingly, Direct Transit seeks transfer of the case to one of the many districts between California and Texas where the loss *might have* occurred.

■ Direct Transit's contention is rejected for several reasons. *First,* the legislative history of the Carmack Amendment (Revised Interstate Commerce Act, 49 U.S.C.A. § 11707) reveals that Congress was concerned with and sought to resolve venue issues such as that in the present case:

> The Conference substitute adopts the House amendment with respect to changes in venue for Carmack Amendment cases. Hereafter, cases may only be brought in the court having jurisdiction over the originating carrier's point of origin, *against the delivering carrier in a court at the principal place of business of the person entitled to recover against the carrier* or having jurisdiction over the point of destination, or against an originating, intermediate or delivering carrier in a court having jurisdiction over the point where the loss or damage is alleged to have occurred. *Because existing law permits an action wherever the carrier operates venue is virtually uncontrollable and frequently, inconvenient.*[1]

As evident from the above-quoted excerpt from the legislative history, Congress sought to select the appropriate and most reasonable venue for certain factual scenarios. Among the reasons for these venue selections

was to reduce the carriers' financial burden of litigating in a forum unrelated in any way to the claims for loss or damage to goods shipped.[2] Most importantly, however, is Congress' admonition that "[h]ereafter, cases may only be brought ... *against the delivering carrier in a court at the principal place of business of the person entitled to recover against the carrier,*" except for certain situations which Congress delineated in the Act. This District is Seko's principal place of business, and Direct Transit is the delivering carrier. And, as demonstrated hereafter, the above-quoted admonition controls because none of the congressional exceptions apply.

*Second, sections 11707(d)(1) and 11707(d)(2)(A)(iii) must be read together.* In §§ 11707(d)(2)(A)(i) through (iii), Congress selects the most appropriate district for certain factual scenarios. For situations that do not fall within the parameters of these sections, the aggrieved party may use § 11707(d)(1) which permits suit against a delivering carrier in any district court of the United States. Accordingly, since the situs of the loss is unknown, Seko—*"the person entitled to recover against the carrier"*— is free to file suit *"against the delivering carrier in a court at [Seko's] principal place of business."*

■ The position advanced by Direct Transit is contrary to the legislative history of the Act. Congress sought to protect carriers from the financial burden of having to defend claims of loss in districts which bore no relationship or connection to the alleged loss or the aggrieved party or the carrier. Direct Transit proffers a multitude of states as a forum—none of which has any connection to the action or the parties except that the shipping route runs through them. Selection of such a state would not even be predicated upon speculation. It would be a random arbitrary selection—exactly the type of selection Congress sought to avoid. Ac-

---

1. 4 United States Code Congressional and Administrative News 3978, at 4135 (96th Congress—2d Session—1980) (emphasis added).

2. In general, venue statues exist for two primary reasons: **(1)** to lay venue in a place that has a logical connection with the parties to the litigation and **(2)** to protect the defendant against the hardship of having to litigate in a distant place. *Energy Resources Group, Inc. v. Energy Resources Corp.,* 297 F.Supp. 232, 234 (S.D.Tex.1969).

cordingly, when the two sections are read together, it is clear that since Seko cannot allege the situs of the loss because it is unknown, it may sue in the district where it has its principal place of business.

Indeed, given the factual circumstances of this case, the district where Seko has its principal place of business is the most appropriate district. The meritlessness of Direct Transit's position becomes very apparent when one realizes that the carrier seeks to have the action transferred to an unknown forum—*anywhere along its shipping route between California and Texas.* Direct Transit does not tender a state, but leaves the choice completely up to the Court. Under such circumstances, it is difficult to understand how a district can be deemed convenient for a carrier if the carrier, itself, has no idea to what district the case is to be transferred.

In any event, the Northern District of Illinois is convenient to both parties. Seko's principal place of business is this District. Direct Transit has offices in the adjacent state of Indiana. Most importantly, Direct Transit offers no evidence that defending in this district will cause it any hardship whatsoever.

**Accordingly, it is adjudged, decreed and ordered as follows:**

The Northern District of Illinois being *"the principal place of business of the person entitled to recover against the [offending] carrier "*, and the situs of the loss being unknown, Seko may file suit *"against the delivering carrier "* in this District.

**So Ordered.**